# BUILDING AND LOAN ASSOCIATION OF DAKOTA *v.* PRICE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE NORTHERN DISTRICT OF TEXAS.

No. 158. Submitted December 9, 1897. — Decided January 10, 1898.

The court below having dismissed the bill in this case on the ground that
it had no jurisdiction, as the matter in dispute was determined not to
exceed $2000 exclusive of interest and costs, this court examines the
bill at length in its opinion, and holds that upon the face of the plead-
ing the matter in dispute is sufficient to give the court below jurisdic-
tion, and remands the case for further proceedings, without determining
any of the other questions on the merits.

THE case is stated in the opinion.

*Mr. J. H. Hauser* and *Mr. C. W. Starling* for appellant.

*Mr. W. S. Simkins* and *Mr. T. E. Conn* for appellees.

MR. JUSTICE PECKHAM delivered the opinion of the court.

The appellants herein commenced this action against the
defendants in the Circuit Court of the United States for the
Northern District of Texas, the complaint in which was filed
on the 3d of October, 1895. The defendants demurred on
the ground that the court had no jurisdiction of the several
subjects-matter set forth in the complaint, one of the objec-
tions being that the matter in dispute did not exceed $2000
exclusive of interest and costs.

The cause was heard in the Circuit Court, the demurrer
was sustained, and the bill dismissed with costs and without
prejudice, for want of jurisdiction of the subject-matter in
controversy. The complainant appealed to this court, which
appeal was allowed and granted solely upon the question of
the jurisdiction of the Circuit Court, and that question alone

has been certified. Whether the bill shows facts sufficient to invoke the consideration of a court of equity is not such a question of jurisdiction as is referred to in the Judiciary Act of March 3, 1891, c. 517, and we have therefore no concern with that question. 26 Stat. 826, § 5; *Smith* v. *McKay*, 161 U. S. 355.

The decision of the only question before us depends upon whether the allegations contained in the bill of complaint show the matter in dispute to be of sufficient value to give the Circuit Court jurisdiction.

The appellant was incorporated under the laws of the State of South Dakota, and has its principal place of business in the city of Aberdeen, in that State. The action was brought for the purpose of recovering the amount of an alleged debt, damages and costs against the defendants Price, Rothschild and Miller, and for a decree of foreclosure against the defendants H. M. Price and W. B. Luna, under a certain mortgage and vendor's lien on the premises described therein.

The bill alleges, among other things, that on the first of January, 1890, one Jacob Rothschild applied for membership in the complainant's association and subscribed for forty shares of its capital stock, which application was accepted, and on that day a certificate for forty shares of the capital stock was issued and delivered to him, and he paid the application or subscription fee due thereon, and the stock was accepted and received by him upon the terms and conditions therein set forth, and he thereupon became a member of the association and the holder and owner of forty shares of its capital stock.

The bill then proceeds as follows :

"3d. Your orator further shows that on or about the said first day of January, 1890, the said Jacob Rothschild, being then and there a stockholder in your orator and entitled under the rules, regulations and by-laws to make application for an advancement on his said stock, made his application to your orator for an advancement of two thousand dollars in anticipation of the maturity value of his said forty shares of stock, and in competition with other bidders for the funds of your

orator bid as a premium for the privilege of obtaining such advancement the sum of fifty dollars per share and offered as security for the continued payment for the monthly dues on said forty shares of stock and the interest on said advancement the real estate hereinafter described; and your orator further shows that said application and bid were made in accordance with the rules, regulations and by-laws of said association, and were duly accepted and approved by your orator's board of directors, and the advancement applied for was duly made, and the amount due thereon was duly paid to the said Jacob Rothschild; that said advancement was made by your orator on the faith and in the expectation that the said Rothschild would, according to his agreement, continue the monthly payment on his said forty shares of stock until such stock should have become fully matured and of the value of one hundred dollars per share.

"4th. Your orator further shows that on or about the first day of February, 1890, the said Jacob Rothschild and the defendant, Bertha Rothschild, for and in consideration of the advancement so made and for the purpose of securing the continued payment of the monthly dues on said stock, made, executed and delivered to your orator, and thereby promised and agreed to comply with the terms of a bond, of which the following is substantially a copy:

"'Know all men by these presents, that Jacob Rothschild and Bertha Rothschild, his wife, of the county of Dallas, and State of Texas, are held and firmly bound unto the Building and Loan Association of Dakota, of the city of Aberdeen, and State of South Dakota, in the sum of four thousand ($4000) dollars, lawful money of the United States of America, to be paid to the said association, its certain attorney, successors or assigns, at its home office in Aberdeen, South Dakota, to which payment, well and truly to be made, we bind ourselves and our heirs, executors and administrators, jointly and severally, firmly by these presents.

"'Sealed with our seals, and dated at Aberdeen, South Dakota, this first day of February, one thousand eight hundred and ninety.

"'The condition of this obligation is such that, whereas, said Jacob Rothschild has bid, in accordance with the by-laws of said association, the sum of two thousand ($2000) dollars, as and for a premium for the advancement to him by said association of two thousand dollars, by way of anticipation of the value, at their maturity, of forty shares of the capital stock of said association, now owned by said Jacob Rothschild and, whereas, said association has this day advanced to said Jacob Rothschild the sum of two thousand dollars, in consideration of said premium, and by way of said anticipation:

"'Now, therefore, if the above bounden Jacob Rothschild and Bertha Rothschild, their heirs, executors and administrators, or any of them, shall well and truly pay or cause to be paid unto the said association, its certain attorney, successors or assigns, at its home office, on or before nine years from date hereof, the just sum of four thousand dollars as aforesaid, together with interest on two thousand dollars, at the rate of six per cent per annum, from the first day of February, A.D. 1890, until paid, payable monthly in advance; or shall well and truly pay, or cause to be paid, unto said association, its certain attorney, successor or assigns, at its said home office, the sum of twenty-four and $\frac{00}{100}$ dollars on the first day of each and every month hereafter, as and for the monthly dues on said forty shares of capital stock of said association now owned by the said Jacob Rothschild, and by him hereby sold, assigned, transferred and set over to said association as security for the faithful performance of this bond, and shall also well and truly pay, or cause to be paid, all instalments of interest aforesaid, and all fines which become due on the said stock, without any fraud or further delay, until said stock becomes fully paid in and of the value of one hundred dollars per share, and shall then surrender said stock to said association; then, and in either of such cases, the above obligation to be void, otherwise of full force and virtue.

"'Provided, however, and it is hereby expressly agreed, that if, at any time, default shall be made in the payment of said interest, or the said monthly dues on said stock, for the space

of six months after the same, or any part thereof, shall have become due, or if the taxes and assessments on the property mortgaged to secure the faithful performance of this bond be not paid when due, or if the insurance policy or policies on the said mortgaged property be allowed to expire without renewal, then, and in either or any such case, the whole principal sum aforesaid shall, at the election of said association, its successors or assigns, immediately thereupon become due and payable, and the sum of four thousand dollars, less whatever sum has been paid said association, as and for the monthly dues on said forty shares of said capital stock, at the time of said default, may be enforced and recovered at once as liquidated damages, together with and in addition to, all interest and fines then due, and all costs and disbursements, including said taxes, insurance and assessments, which have been paid by said association, anything hereinbefore contained to the contrary notwithstanding.

"' JACOB ROTHSCHILD. [SEAL.]

"' BERTHA ROTHSCHILD. [SEAL.]

"' Signed, sealed and delivered in presence of —

"' W. L. HALL.

"' C. S. CRYSLER.'

"5th. Your orator would further show that, on the first day of February, 1890, the said Jacob Rothschild and the defendant Bertha Rothschild, in order to better secure your orator for the money advanced by your orator as aforesaid and in all their agreements, obligations and contracts as aforesaid, made, executed and delivered to your orator their certain mortgage or deed of trust, with power of sale, in which Charles S. Crysler was made trustee on the following described tract or lot of land, situated in the city of Dallas, county of Dallas, and State of Texas, and more particularly described as follows:

(Here follows description of property.)

"6th. Your orator would further show that it is recited in said deed of trust, among other things, that the said Jacob Rothschild is a member of the Building and Loan Association

of Dakota, and is the owner of forty shares of the capital stock thereof, the monthly payments of which amount to $24.00; and it is further recited that said deed of trust is given for the purpose of securing the aforesaid bond, the nature of which bond is fully set forth in said deed of trust.

"7th. Your orator would further show that it is stipulated in said deed of trust that if the said defendants shall well and truly pay or cause to be paid the sum of four thousand dollars, together with the interest above specified, within the time and in the manner as in said bond specified, or shall pay or cause to be paid, at the home office of said association, the instalments of interest as they become due on said stock, until said stock becomes fully paid in and of the value of one hundred dollars per share, and before any of said instalments of interest or monthly payments shall have been past due for a period of sixty (60) days, and shall then surrender said stock to said association in payment of said bond, and shall pay the taxes and assessments and shall keep and perform all and every of the conditions of said bond, then this deed shall be void and the property hereinbefore conveyed shall be released at the cost of the parties executing the said bond, but otherwise to continue in full force and effect; but if default be made in the payment of said sum or sums of money or any instalment of interest thereon or of any monthly payment of stock for the period of sixty (60) days after the same shall be due, or any part of either, or in the payment of taxes at the time or times specified for payment, or in any condition in said deed of trust contained, then or in either or any such case the whole principal sum or sums secured by this trust deed and the interest thereon accrued up to the time — such default shall, at the election of your orator, its successors or assigns, or its or their agent, become thereupon due and payable immediately upon said default. Whereupon the trustee in said trust deed is authorized and empowered to sell said premises in accordance with the stipulations contained in said instrument, and with the proceeds of said sale to pay the expenses of sale and all sums of money due by the terms of said bonds so in default, with all interest due thereon, and all taxes, if any, due to said association.

"8th. Your orator further shows that said forty shares of stock have not been withdrawn, nor have they matured or become of the par value of one hundred dollars per share; that subsequent to the execution, delivery and record of the aforesaid deed of trust the said Jacob Rothschild and Bertha Rothschild conveyed the aforesaid premises to the defendant Sophia Miller, who, as a part of the purchase price for said premises, assumed and agreed to pay the said bond in the sum of four thousand dollars, secured by the aforesaid deed of trust lien, retaining a vendor's lien in said deed of conveyance to secure the payment of the aforesaid sum of four thousand dollars; that subsequently the said Sophia Miller conveyed said premises in like manner to the defendant M. S. Price as her separate property, who, as a part of the purchase price therefor, assumed and agreed to pay said bond secured by said deed of trust lien, said Sophia Miller retaining a vendor's lien for the payment thereof and for the payment of other portions of the purchase money, by virtue of which she may claim some interest in the aforesaid premises; that W. B. Luna also claims some interest in the aforesaid premises, which interest, if any, is subsequent and inferior to that of your orators.

"Your orator further alleges that it is now the owner and holder of the said bond and deed of trust. Your orator further shows that the said defendants have not paid said principal sum of $4000, nor any part thereof; that the said defendants have not continually paid the monthly dues on said forty shares of stock, nor the monthly instalments of interest as provided in said bond, but that defendants have paid no part of said dues or interest except the sum of twelve hundred dollars ($1200) as and for the said monthly dues for the month of February, 1890, to and including the month of March, 1894, and the further sum of $500 as and for the interest, as in said bond provided, for the month of February, 1890, to and including the month of March, 1894.

"Your orator further shows that default has been made in the payment of the monthly dues on said forty shares of stock and the monthly instalments of interest on said ad-

vancement; that more than six months have elapsed since the first monthly instalment of interest and dues so in default became due and payable, and your orator elects to declare the whole sum named in and secured by said bond and deed of trust to be immediately due and payable.

"9th. Your orator further shows that there is now due and owing your orator from Bertha Rothschild, Sophia Miller, H. M. and M. S. Price under and by virtue of the terms of said bond the sum of four thousand dollars, ($4000,) less the sum of twelve hundred dollars, ($1200,) paid to your orator as the monthly dues on said forty shares of capital stock at the time of the aforesaid default, aggregating $2800, together with and in addition to interest on two thousand dollars, at the rate of six per cent per annum, from April 1, 1894."

The complainant then prays for a decree against defendants for the amount of the above-named debt, damages and costs, and for a decree of foreclosure of the mortgage above set forth.

We think upon the face of this pleading the matter in dispute exceeds the amount of two thousand dollars, exclusive of interest and costs.   Act of August 13, 1888, 25 Stat. 433, c. 866.

The by-laws of the complainant are not made a part of the bill and they cannot be referred to for the purpose of aiding or marring the pleading itself.   In truth, they are not in the record, and we are ignorant of their contents, except as some matters set forth in the bill are alleged to be in conformity with certain of their provisions.   Nor can the inference be indulged, on a question of jurisdictional amount, that the whole scheme is a mere cover to conceal an usurious exaction of interest for the loan of a sum of money not exceeding in any event $2000.   No such legal inference arises from the facts stated in the bill.   On the contrary, it appears on the face of the bill that the company was duly incorporated by legislative act; that Rothschild, the original owner of the stock, applied for membership in the company, subscribed for forty shares thereof, and promised to pay for it in the manner stated.   We cannot assume, as a matter of legal inference,

that the circumstances set forth in the bill constitute a cover for usury, and we must take those allegations as they are made and assume their truth for the purpose of our decision.

The bill shows an application to complainant for an advance of $2000 in anticipation of the maturity value of the shares of stock owned by Rothschild; that the application was granted and the advance applied for duly made and the amount paid to Rothschild, and that it was made on the faith and in the expectation that he would, according to his agreement, continue the monthly payments on his stock until it became fully matured and of the value of one hundred dollars per share. The bond given as part security for the repayment of this advance contains distinct contracts. The obligor agreed to pay in nine years from the date thereof $4000, and interest on $2000 at six per cent from February, 1890, until paid, the interest being payable monthly in advance; or, instead of this payment, he agreed to pay $24 on the first of every month at the home office of the company as monthly dues, being at the rate of sixty cents per month on each share, there being forty shares of stock, and he agreed to continue these payments until the stock became fully paid up and of the value of $100 per share, when he was to surrender it to the company, and he agreed also to pay the interest as stated above.

We cannot assume, as against the allegations contained in the bill, that the payment of these monthly dues upon the contract was pursuant to an agreement to pay interest on the loan, and that such payment was merely another name for interest. It is alleged to be separate and distinct from that, and it is set up as a material portion of the obligation of the borrower who, by subscribing for the shares and being accepted, etc., thereby became a shareholder and entitled to dividends and profits coming to the shares he held. Upon default in either of these distinct obligations, to pay interest and to also pay his monthly dues, the whole sum at the option of the association became due less whatever sum had been paid it as the monthly dues at the time the default might be enforced. The bill here shows that there had been a default

for six months, and that there was due from defendants at commencement of suit the sum of four thousand dollars, less the sum of twelve hundred dollars of monthly dues which had been paid up to and including March, 1894, leaving due the sum of $2800, together with and in addition to the interest on $2000, at the rate of six per cent per annum, from April, 1894.

The matter in dispute, therefore, is not merely $2000 money loaned, together with the interest on that sum, but the claim on the part of the complainant is for the payment of the principal sum above stated, which exceeds the sum of $2000, exclusive of interest and costs. All these facts are admitted by the demurrer.

The nature of this association is not very clearly set forth in the bill, but it is probably not materially different from those which have been incorporated to a great extent in many different States, and referred to generally in Endlich in his work on Building Associations.

A question somewhat similar to this has been decided in *Richard* v. *Southwestern Building & Loan Association*, 21 S. R. 643, (49 La. Ann.,) where it was held that a loan of this nature was not to be treated as usurious, for the reason that the payments supposed to constitute the usury were by the terms of the contract made upon the stock debt and not upon the loan. To the same effect is *Equitable Building & Loan Association* v. *Vance*, 27 S. E. Rep. 274, Supreme Court of South Carolina, May, 1897.

The stock is not, as is claimed by counsel for appellee, a mere fiction. It is issued, it is to be assumed on this appeal, in accordance with the provisions of the charter of the complainant, and the owners of it are entitled to share in the profits of the corporation, which it is supposed it will be enabled to make during its existence, and his position of shareholder is entirely separate from his position of borrower from the company.

Without determining any of these questions on the merits, we think the matter in dispute was within the jurisdiction of the Circuit Court, and we therefore reverse the judgment

dismissing the bill, and remand the case to the Circuit Court with directions to take such further proceedings as may be in conformity with this opinion.

*Reversed.*