RUSSELL v. PIERCE.

1. Building and Loan Associations—Mortgages—Application of Payments.

One who takes stock in a building and loan association for the purpose of procuring a loan is not entitled, upon the association's becoming insolvent, to have the amounts paid by him upon the stock applied on the mortgage by which the loan was secured.

2. Same—Locus of Contract..

A contract of a building and loan association in Minnesota, which is dated and made payable in that State, and which expressly declares that it is subject to the laws of Minnesota, is a Minnesota contract, although the other party to the contract resides in Michigan, and a loan on Michigan land is contemplated.

Appeal from Clare; Dodds, J. Submitted January 5, 1899. Decided September 19, 1899.

Bill by Robert D. Russell, receiver of the Security Savings & Loan Association, against Henry W. Pierce and wife and Alfred J. Doherty and wife, to foreclose a mortgage. From a decree of foreclosure for less than the amount claimed, complainant appeals. Reversed.

This is a proceeding to foreclose a mortgage executed by the defendants Pierce to the Security Savings & Loan Association of Minneapolis, Minn. The defendant Doherty is a subsequent purchaser. The question involved is how much is due on the mortgage.

On the 10th of January, 1890, Henry W. Pierce subscribed for eight shares of the capital stock of the building and loan association, agreeing to pay 60 cents a share thereon monthly until fully matured. He also paid a membership fee of $8. Thereafter the said Henry W. Pierce made, in accordance with the rules and regulations

and by-laws of said association, a certain application to the said association for a loan or advance of $400 by way of anticipation of the value, at their maturity, of his eight shares of stock in said association, according to the by-laws of said association, and, in competition with other bidders, bid the sum of $400 as and for a premium for the privilege of obtaining such loan or advancement, and said application was forwarded to the home office of the company at Minneapolis, and the application was granted, and said Pierce received the sum of $400. As evidence of this indebtedness, Pierce and his wife, March 14, 1890, executed their joint note to said association for the sum of $800, payable on or before 10 years after date. This note was dated and made payable at Minneapolis, and provided for the payment of 6 per cent. interest per annum on the sum of $400. The balance of the $800 was for the premium. The note provided that, if the maker failed to make payment of any monthly payment, fine, or dues on said stock, or to pay any installments of interest thereon, for a period of six months after the same became due, then the whole amount should at once become due and payable. At the time of receiving this loan, the said defendant Henry W. Pierce assigned all of his right, title, and interest in and to the shares of said stock to the association. For the purpose of securing the payment of said note at maturity, Pierce and wife executed a mortgage deed to said association, and said mortgage expressly stated that it was given to secure a loan made on eight shares of stock in said association, the monthly payments on which amounted to $4.80, and said mortgagors did further covenant and agree to make said monthly payments on said stock as they should become due, and to pay all fines and dues as a stockholder of said association, according to its by-laws, and said mortgage contained other stipulations as mentioned in said note.

Upon said note and mortgage said Henry W. Pierce made 68 monthly payments on his shares of stock, of $2.40 each, on the 10th day of each and every month, commen-

cing the 10th day of February, A. D. 1890, up to and including the 10th day of September, 1895, amounting to $163.20. He also paid 66 months' interest, at $2 per month, amounting to $132, on the 10th day of each and every month, commencing April, 1890, down to and including September, 1895. He also paid 68 monthly payments on the premium, of $2.40 each, on the 10th day of each and every month, commencing February 10, 1890, down to and including September 10, 1895, amounting to $163.20. After the 10th day of September, 1895, he made no further payments on said note and mortgage, and, being in default to said association for more than six months after the payments on said stock, interest, and premium became in default, the said association elected to declare the whole sum, as secured by said note and mortgage, immediately due and payable, and said association, on the 6th day of May, 1897, filed its bill of complaint to foreclose the mortgage, joining as defendants Doherty and his wife, who were subsequent purchasers.

Robert D. Russell, on the 29th day of November, A. D. 1897, was duly appointed as receiver for said association by the district court of the Fourth judicial district of the State of Minnesota, on the ground that the association had become insolvent. Upon the hearing, Robert D. Russell, as receiver of said Security Savings & Loan Association, was substituted as complainant in this cause. The complainant claims that, as the association has become insolvent, the said defendant Henry W. Pierce be charged with the $400 actually received from the association, with interest thereon at the rate of 6 per cent. per annum from the date on which the same was borrowed or obtained from the association to November 29, 1897, the date of the receiver's appointment, and that he be credited with the sums so paid as interest and premium, together with interest at 6 per cent. per annum on said payments of interest and premium from their respective dates, in the manner of partial payments, to November 29, 1897, with interest at 6 per cent. per annum, leaving all payments made on

stock, amounting to $163.20, in the hands of the receiver to await the winding up of said corporation, and to be paid back to him, the said Pierce, in the regular course of distribution by the receiver; and it is admitted· by the defendants that, if computed as above, there was due on said note and mortgage, November 29, 1897, the sum of $201.80. The defendants' counsel insists that the defendant Pierce be charged with the amount of the loan ($400), less the amount retained for two months' dues for advance payments, amounting to $9.60, and $8 admission fee, ·making him charged with the amount actually received by him of $380.40; that all payments made by him, whether stock payments, interest, or premium, be applied on said note and mortgage; and that interest be computed monthly, at the rate of 6 per cent. per annum. This was the view entertained by the circuit judge before whom the case was heard, and a decree was accordingly entered, and it is contended by complainant that this was error.

*Smith & Empson*, for complainant.

*C. W. Perry*, for defendants.

MONTGOMERY, J. (*after stating the facts*). It is settled by authority that payments of dues on stock are not payments on the mortgage debt, and do not, *ipso facto*, work an extinguishment of the mortgage. End. Bldg. Ass'ns, § 477; *Price* v. *Kendall*, 14 Tex. Civ. App. 26; *Rogers* v. *Rains*, 100 Ky. 295; *Building & Loan Ass'n* v. *Price*, 169 U. S. 45. There is no evidence of fraud, nor are any misrepresentations shown, such as appeared in *Sawyer* v. *Building Ass'n*, 103 Mich. 229. The contention of defendants' counsel is that the subscription to stock and the loan were parts of one transaction, and that the contract was usurious. The contract was a Minnesota contract. It was dated at Minneapolis, was made payable at Minneapolis, and expressly stated that it was made subject to the laws of Minnesota. This clearly makes it a Minnesota contract. *Bennett* v. *Building & Loan*

*Ass'n*, 177 Pa. St. 233 (55 Am. St. Rep. 723); 27 Am. & Eng. Enc. Law, 971, 972, and note; Id. 974. The contract is within the laws of this State authorizing building and loan associations. *People's Building & Loan Ass'n v. Billing*, 104 Mich. 186. The law of Minnesota is not proven. Some authorities hold that the presumption to be indulged, in the absence of proof, is that there is no law in the sister State against usury, while others hold that the presumption should obtain that the law of the sister State is the same as ours. 27 Am. & Eng. Enc. Law, 976. Whichever rule is followed, the defense is not made out in this case.

The decree will be reversed, and a decree entered for the complainant in the sum of $201.80, and interest from November 29, 1897, and costs of both courts.

The other Justices concurred.