### KINNEY et al. v. COLUMBIA SAVINGS & LOAN ASS'N.

(Circuit Court, D. Utah. January 13, 1902.)

### No. 349.

1. BUILDING AND LOAN ASSOCIATION—STOCK—LOAN—PLACE OF CONTRACT.

Where plaintiff subscribed for stock in a Colorado building and loan association, and borrowed money thereof, giving a mortgage on property in Utah to secure the payment, the notes and interest to be paid in Colorado, the contract was a Colorado contract.

2. SAME—INTEREST—RATE—PAYMENTS.

Where, on borrowing from a building association, plaintiff gave a note, agreeing to pay the principal, with interest and installments, according to the by-laws, and no rate of interest was fixed by the by-laws, but the prospectus used in inducing plaintiff to join the association, and which was part of the contract, by illustrations, showed the amount of the monthly payments, each, of the borrowing and the nonborrowing members, the excess paid by the borrowing member as so illustrated should be construed as payments of interest and not as payments on the principal.

3. SAME—BORROWER—WITHDRAWAL OF STOCK.

Under the statutes of Colorado, a stockholder who has borrowed from a building and loan association cannot withdraw his stock until the loan is paid.

4. SAME—MATURITY OF STOCK—MORTGAGE—FORECLOSURE.

Where at the time of borrowing from a building and loan association it is estimated that the stock will mature and pay the loan in six years, and a note is given, payable in six years, a mortgage given to secure such note may be foreclosed at the expiration of six years if such stock has not then matured.

5. TRUST DEED—FORECLOSURE—ATTORNEY'S FEE.

Where, in an action to have a note canceled, defendant, by cross bill, asks a foreclosure of the trust deed given to secure such note, alleging that the trustee refuses to act, on recovering such relief defendant is not entitled to the attorney's fee provided in such deed to be paid to such trustee in case of foreclosure.

6. SAME—BUILDING ASSOCIATION—SALE OF STOCK.

Where, in an action by a building and loan association to foreclose a trust deed given by a borrowing stockholder, it is prayed that the stock

of such borrower be sold, the court may require that such stock be not sold for less than its withdrawal value.

7. SAME—WITHDRAWAL VALUE OF STOCK—ASCERTAINMENT.

Where, in an action by a building and loan association to foreclose a trust deed and sell the stock of a borrowing member, the withdrawal value of such stock is not ascertained or stipulated by the parties, the decree should be withheld until such value has been ascertained and reported by a master.

In Equity.

C. S. Varian, for plaintiffs.

A. J. Rising and Jabez Norman, for defendant.

MARSHALL, District Judge. The defendant is a building association organized on the plan usually affected by such associations. It issues stock to subscribers, of a par value of $100 per share. A small entrance fee is required, and the subscriber promises to pay to the association 70 cents per month on each share so issued. The funds accumulated by these monthly payments are used by the association—First, for the payment of its expenses; and, secondly, for the making of loans to its shareholders. When the profits made by the association from its loans and the monthly payments made by the shareholders aggregate $100 for each share of stock subscribed, the shares are said to be matured. They are then canceled, and their par value paid to the subscribing shareholders. The defendant was organized as a corporation under the statutes of Colorado. Section 2 of the statute of that state entitled "An act concerning building and loan associations," approved April 17, 1889 (Sess. Laws 1889, p. 41), provided, in substance, that any shareholder of such a corporation should have the power to withdraw his shares upon giving 30 days' notice of an intention to do so, and should on such withdrawal be entitled to receive the amount provided by the by-laws of the company or determined by the board of directors, less all fines and other charges, provided, however, that no shareholder should be entitled to withdraw the stock held in pledge for security. The defendant issued a prospectus, on the faith of which subscription to shares was solicited and taken, and in which it was stated that "stock may be withdrawn at any time, and the member will be entitled to receive for each share the money paid into the loan fund in monthly payments on such shares, together with six per cent. annual interest after one year. Members who have obtained loans cannot withdraw their shares until loans are paid." The complainants are husband and wife. On the 12th day of June, 1890, Antoinette B. Kinney, for the benefit of herself and of her husband, subscribed for 25 shares of the capital stock of the defendant, paid the required entrance fee, and the stock was issued to her. This subscription was made with the intention of procuring a loan of money from defendant. On the 22d day of November, 1890, the complainants borrowed from the defendant $2,500, and made to it their promissory note as follows:

"No. ———.         Salt Lake City, Utah, November 22nd, 1890.

"On or before six years after date, for value received, we, or either of us, promise to pay to the Columbia Building and Loan Association, at its office in Denver, Colo., twenty-five hundred ($2,500.00) dollars, with interest and

installments according to the by-laws of the association, payable on or before the 5th day of each and every month.

"$2,500.00.
Antoinette B. Kinney.
"Clesson S. Kinney."

On the same day they executed to a trustee a deed of trust of certain real estate situated in Salt Lake county, Utah, to secure the payment of said note, "with interest and installments thereon, according to the by-laws and rules of said association." At that time the formal by-laws of the association contained no provision as to any rate of interest, but the association had issued a prospectus which contained various regulations of the association. In the bill it is alleged that the contract by which the shares of stock were issued to Mrs. Kinney was "made by both parties in accordance with the representations of said prospectus, which by agreement of the parties were made a part of the contract of subscription," and this is admitted in the defendant's answer. The prospectus in question contained the following illustration of the cost of shares to a nonborrower, and of the cost to a borrower:

"Illustration.

Showing the cost to the nonborrower of ten shares of stock:

| | | |
|---|---|---|
| Admission fee, $1.00 on each share | $ 10 00 | |
| Monthly installment, $7.00 per month for 72 months | 504 00 | |
| Total cost to the investor | $ 514 00 | |
| Amount of shares at maturity | 1,000 00 | |
| Net profit on ten shares | | $ 486 00 |

Showing cost on ten shares, of $100 each, to the borrower:

| | | |
|---|---|---|
| Admission fee of $1 on each share | $ 10 00 | |
| He receives in cash | 1,000 00 | |
| He pays on the last Saturday of each month 1/72 of $1,000 (less membership fee) | 13 75 | |
| Also his interest at 3 per cent. per annum on $1,000 | 2 50 | |
| | $ 16 25 | |
| In 72 months he will have paid | | $1,170 00 |
| Also the admission fee as stated above | | 10 00 |
| Total cost of $1,000 loan | | $1,180 00 |

"The certificate of shares, having matured, is worth $1,000 which pays the loan. Thus the borrower has had the use of $1,000 six years, and has paid an amount equal to 3 per cent. interest per annum for the use of the same."

It further provided that "once in six months the profits arising from interest, fines, and other payments are divided among the shares in good standing. All members receive the same per cent. of profits as the dividends are declared on the entire business, and not on any one branch."

In the bill it is further alleged, and the answer admits, that prior to the 1st day of January, 1901, the by-laws of the defendant were amended so as to, in part, at least, conform to the representations made in the prospectus. The material part of such amended by-laws is as follows:

"Sec. 4. Each shareholder, for each share named in his or her certificate, shall be entitled to a loan of $100 from the association. * * * All shares

must be in force three months before said shareholder shall be entitled to a loan."

"Sec. 7. Shareholders having obtained loans shall, on or before the last Saturday of each and every month, until the stock borrowed upon shall have matured, and the loan is thereby repaid, make, or cause to be made, payments as follows: One seventy-second of the sum borrowed (less the membership fee); also interest at the rate of 3 per cent. per annum upon the original amount of the loan."

"Sec. 9. All shareholders shall pay, or cause to be paid, a monthly installment of seventy cents on each share named in his certificate; said installments to be paid to the association on or before the last Saturday of each month during the continuance of the certificate, unless a loan has been obtained on the stock, when payments shall be made according to section 7. Shareholders are required to pay all monthly installments without notice."

The original by-laws provided that:

"Sec. 14. Three or more shareholders may associate, and form a local board, elect officers,—one as a secretary, to visit the home office, or any office of the association, and examine the books and affairs of the association, and report the same on his return; elect a treasurer, who, upon giving bond, can receive all installments, and any payments in the locality in which he resides, as agent of the shareholders, but not of the association, and remit the same to the home office." And further: "Monthly payments should be paid at the office of the association." And that "all remittances for admission, monthly installments, fines, penalties, interests, dues, and all other payments, shall be made to the association at its principal office."

The shareholders of the association within Utah elected a local board of directors and the requisite officers, and the payments made as hereafter stated by complainants were made to the local treasurer, and by him remitted to the home office of the association. Commencing with the 5th day of July, 1890, and until January 1, 1891, the plaintiffs paid as installments on their stock $17.50 each month, which was at the rate of 70 cents per share. From the 1st of January, 1891, until the 1st day of August, 1896, they paid to the association the sum of $40.63 each month. No further payments were made until the 2d day of August, 1898, when the sum of $40.63 was paid, and a similar payment made for September, October, and November of that year. In December, 1898, they paid the sum of $17.50, and no further payments have been made.

It is stipulated by the parties that prior to the filing of the original bill "the plaintiffs demanded of the defendant that it satisfy said loan and deed of trust, and cancel and deliver their promissory note, and reassign their policy of insurance, and that it permit them to withdraw the said shares of stock, all of which the defendant refused, and still refuses, to do." The suit was filed by the complainants, claiming that they had overpaid their indebtedness to the defendant. They asked that the deed of trust be canceled, and their note surrendered; that an accounting be had to determine the amount due by the defendant to them by reason of their overpayment; and that the defendant be required to pay any amount found to be due upon the accounting. The bill also contained an offer on the part of the complainants to pay any sum found to be due from them on such an accounting. The defendant filed its answer, in which any overpayment is denied, and also, by a cross bill, seeks to foreclose the deed of trust so executed by the complainants. The defendant claims that the

entire principal and a large part of the interest of the indebtedness are still unpaid. It is alleged and shown that the trustee named in the deed of trust, and also his successor in trust, have declined to act.

The contract between these parties was to be performed in the state of Colorado, and is to be construed as a Colorado contract. On the argument this was, in effect, admitted. It is settled by the highest authority. Bedford v. Association, 181 U. S. 227, 21 Sup. Ct. 597, 45 L. Ed. 834; Association v. Rector, 38 C. C. A. 686, 98 Fed. 171; Andruss v. Association, 36 C. C. A. 336, 94 Fed. 575; Hieronymus v. Association (C. C.) 101 Fed. 12; McIlwaine v. Ellington (C. C. A.) 111 Fed. 578. It is not claimed that, so considered, there is any legal objection to the validity of the contract, whether the plaintiffs' or defendant's construction of it be accepted. The plaintiffs' contention is that they borrowed money of defendant, and agreed to pay interest thereon at the rate of 3 per cent. per annum; that all additional monthly payments made by them were either partial payments of the principal debt, or monthly payments on their shares in the association; that when they exercised their option to withdraw their stock they became entitled to receive from the defendant all money paid to it in monthly payments on their shares, with 6 per cent. annual interest after one year; and that, if the sum so due them on the withdrawal of their stock is applied in payment of the debt, it will be found that they have overpaid it, whether the monthly payments in excess of 3 per cent. interest are applied immediately in the reduction of the principal, or are suffered to accumulate in the loan fund of the company until the withdrawal of the stock. This contention fails unless the contract rate of interest was as assumed. The note made by the plaintiffs did not specify the rate of interest. By it they promised to pay the principal sum, with interest and installments, according to the by-laws of the association. The deed of trust recites that the note was made for the principal sum of $2,500, payable on or before six years after date, "with interest and installments thereon according to the by-laws and rules of said association." The by-laws, as they existed when the note was made, are entirely silent as to any rate of interest, but the prospectus contained many rules and regulations of the association. The illustration given as to the required payments on a loan contained all the necessary information. The plaintiffs assert, and the defendant admits, that this prospectus formed a part of the contract by which the subscription for shares was made. The plaintiffs further allege, and the defendant admits, that shortly after the loan the defendant amended its by-laws so as to, in effect, make them conform to the representations of the prospectus. Sections 7 and 9 of the amended by-laws are specified, among others, as particulars in which the amended by-laws were made to conform to the prospectus. The right to the loan on good security was based on the subscription for shares. In view of all the circumstances surrounding the parties, the reference in the note to the by-laws and in the trust deed to the rules of the association must be held to refer to the prospectus, which contained, so far as appears, the only requirement on the subject of interest. This accords with the practical construction placed on this contract

by the parties. For many years after the loan payments were made in exact accordance with the requirements of the prospectus. It also seems to accord with the theory of both the plaintiffs and of the defendant. What is the true construction of the prospectus as to the rate of interest? It there appears that it was estimated that each share of stock would mature, or be worth par, at the expiration of six years after the subscription. This was an estimate, and not a warranty. The illustrations given of the cost of shares are based on this estimate. The cost to the borrowing and to the nonborrowing shareholder is itemized. The nonborrowing shareholder receives the par value of his shares at maturity, and the shares are then canceled. The borrowing shareholder receives the par value of his shares at the date of the loan, and his shares, when matured, pay the principal of the loan. Evidently the excess of all sums provided to be paid by the borrower over that exacted of the nonborrowing shareholder constitutes the cost to the borrowing shareholder of the use of the money as a loan. In the illustrations given, the nonborrowing shareholder of 10 shares, of the par value of $1,000, pays to the association $7 per month. The borrowing shareholder, to whom the par value of his stock, $1,000, has been advanced, pays $16.25 per month until his stock matures, when the stock is applied in satisfaction of the loan. It is evident that $9.25 per month is what such a borrowing shareholder pays for the use of the money borrowed, or is the interest paid on the debt. It is true that in the illustration the monthly payment of $16.25 is stated in two items. The first item is $1/72 of $1,000, less membership fee,—$13.75; the second, the monthly proportion of interest on $1,000 at 3 per cent. per annum,—$2.50. But the terms used are immaterial. The monthly payment to be made by the borrower is distinctly stated, and it is just $9.25 more than the monthly payment exacted of the nonborrower. As stated in End. Bldg. Ass'ns, § 336:

"The fact that in some loans by building associations interest upon the advance is not reserved as such can make no difference in the essential nature of the transaction, where its equivalent is added to the borrowing member's stated contributions, the payment of which, thus increased, is secured by his mortgage. Thus, if the par value of a share be $200, the monthly dues upon which, for an investing member, are $1, but, after he has taken a loan of $200 from the association, become $2, it is evident that the additional $1 per month exactly represents the interest he would have to pay, at six per cent. per annum, upon the $200, whether it be called 'dues,' 'interest,' or 'redemption money.' Calling it by another name does not make it another thing."

It is true, that the plan of the association is somewhat disingenuously stated in the prospectus. It carefully avoids stating the actual rate of interest. It was apparently prepared for the purpose of concealing from the ignorant that a very large rate of interest was exacted, —in this case, over 11 per cent.,—and of also concealing from such a person the fact that the mortgage required from the borrowing shareholder secured the monthly payments on his stock, as well as the principal and interest of his loan. But the sums the borrower was required to pay were distinctly stated. It needed but a simple calculation to ascertain the rate of interest. In the case at bar it was en-

tirely plain that $17.50 per month was the requisite 70 cents per share on the stock, and that the remaining $23.13 of the required payments was interest on the loan. Nor can any part of the monthly sum paid be considered as a part payment of the principal of the debt. As shown by the illustration, neither the 3 per cent. annual interest, nor the residue of the monthly payment, decreased in amount as payments were made. At the maturity of the note the stock, if then matured, was to be surrendered in payment of the principal, although all of the monthly payments had then been made. The stock at maturity would equal the full amount of the original principal of the debt. Nor was it a part of the contract that any portion of the excess of the monthly payments of the borrowing over that of the nonborrowing shareholder should be considered as paid on the shares held. The defendant was organized to do business on a mutual basis. In the prospectus (a part of the contract of subscription) it was expressly provided that the profits arising from interest, fines, and other payments should be divided among the shareholders in good standing, and that all members should receive the same per cent. of profit. This shows that there was an equality of right on the part of each shareholder in proportion to the shares held. In this case Mrs. Kinney occupies a twofold contractual relation to the defendant, and her position as a shareholder is entirely distinct from her position as a borrower. Association v. Price, 169 U. S. 45–54, 18 Sup. Ct. 251, 42 L. Ed. 655. She gained no advantage as a shareholder by reason of her character as a borrower. Her right to an apportionment of the funds of the company, and her right on the withdrawal of her shares, was precisely the right of any other shareholder who owned the same number of shares. She can only claim to have paid on her shares the sum required of her as a shareholder, and not as a borrower. No effect can be given the attempt of the plaintiffs to withdraw their stock. At the time of this attempt the stock had not matured, and was held as collateral security by the company, and the statute of Colorado forbade the conferring of such a right. The prospectus of the company, on the faith of which the subscription was made, expressly provided that "members who have obtained loans cannot withdraw their shares until loans are paid." The demand made by the plaintiffs that the stock be withdrawn was before the payment of the loan, and embraced no offer to pay it. Until the loan was fully paid, the defendant had a right to insist that its security on the shares be preserved, and to refuse to release the shareholder from her obligation to make future monthly payments thereon. It follows from what has been said that the plaintiffs have paid no part of the principal of the loan made to them, and that they are entitled to no relief under their bill.

The right of the defendant, under its cross bill, to a foreclosure of the trust deed, must follow. More than six years have lapsed since the note was made. The debt has matured. Its maturity did not depend upon the maturity of the shares. It was estimated that the shares would first mature, and the illustration given in the prospectus shows that it was contemplated that the shares at maturity would pay the principal of the note. But the note was payable absolutely on

or before six years after its date, and not upon condition that the shares had been matured.

Claim is made by the cross complainant for an attorney's fee upon the foreclosure. This is based upon the provision in the trust deed by which the trustee is to be paid a reasonable counsel fee in case of any suit to which he is a party. Such provisions are to be strictly construed. The cross complainant gains no right to a counsel fee from the fact that the trustee would have had such a right, and has declined to act. Fowler v. Trust Co., 141 U. S. 384, 12 Sup. Ct. 1, 35 L. Ed. 786. The trustee was a representative of both parties, and it was reasonable that he should be indemnified for his costs, but the borrowers did not promise to pay the counsel fees of the cross complainant, and are not liable for them. Payette v. Association, 27 Ill. App. 307; Improvement Co. v. Whitehead, 26 Ill. App. 609.

The cross complainant also prays a judicial sale of the 25 shares of stock pledged as security for the debt. It is within the power of the court to fix an upset price on the sale of these shares. In Association v. Junquist (C. C.) 111 Fed. 645, Judge Riner entered a decree in a similar case in which he directed that the pledged shares be sold for a price not less than their withdrawal value. The present withdrawal value of the 25 shares issued by the defendant to Mrs. Kinney does not appear, and, unless the parties to the suit stipulate as to this value, the case will be referred to the master in chancery, with direction to ascertain it upon a hearing upon notice to the parties, and from evidence produced by them.

A final decree of foreclosure will be withheld until the coming in of the master's report.