WILLIAM ALLISON v. W. S. BROOKSHIRE.

The law exempting certain property from forced sale was intended to secure to each family a means of support; and, since in the exemption of two horses it was intended to protect to a family animals to use, it cannot be construed to exclude geldings, mares or mules, all being used for the same purpose.

APPEAL from Williamson. Tried below before the Hon. E. B. Turner.

The facts appear in the opinion of the court.

*Houghton & Fisher*, for appellant.

No brief for appellee has been furnished to the Reporters.

OGDEN, J.—Appellant brought this suit against the appellee to recover a certain mule alleged to have been unlawfully seized by the latter, and for damages for the wrongful detention of the same. The defense set up is that the animal was lawfully seized, under and by virtue of a writ of execution which issued from a justice's court, to satisfy a judgment rendered in said court against the plaintiff below. A judgment having been rendered against the plaintiff in the District Court, he has appealed.

It was claimed in the court below, and is insisted upon here, that the animal seized by the appellee was exempted from seizure and forced sale by the Constitution and laws of the State, and that therefore the seizure was unlawful and void. The act of the Legislature of 1870 (p. 127), passed in full conformity with the requirements of the Constitution, exempts to every family from forced sale, among other things, two horses; and as it was clearly established on the trial below that at the time of the seizure appellant was the head of a family and had but two horses, or rather but one horse and one mule, those animals were not subject to seizure or forced sale for debt, and these facts alone should have entitled the appellant to a recovery of the animal sued for, as the mule seized by the officer was one of those two.

The wisdom of the law exempting certain property from forced sale cannot now be legally called in question,

while it is the imperative duty of the courts to enforce that law whenever its humane provisions have been infracted. Property may be levied upon under an execution, and the officer making the levy will be protected so long as he is ignorant of the fact that the property is not subject to execution, but whenever the interposition of the powers of the court is invoked to protect the legitimate rights of a family, all exempted property may and should be restored at any time while the same is in the custody of the law. We think it was clearly established on the trial below that the animal sued for is exempted to the family of appellant from seizure or forced sale, and that the court erred in not rendering a judgment accordingly.

But it may have been contended in the court below that as the statute does not specifically exempt a mule *eo nomine*, therefore the animal seized was subject to levy and sale for debt. We can hardly think the Legislature intended to use the word horses in that restricted sense. The object of the Legislature in passing the exemption law was manifestly to secure to each family a sure means of comfort and support, in the enjoyment of which they might feel secure. In the exemption of two horses the Legislature evidently intended to protect to a family animals to cultivate the soil, as well as to ride or drive; and we think it would be a very illiberal construction of the legislative intent to say, that the use of the word horses, in that connection, excluded geldings, mares or mules, since all are used for the same purpose.

In the case of Cobbs v. Coleman, 14 Texas, 595, it is substantially said, that statutes should be liberally construed so as to meet the objects intended to be accomplished by the Legislature, and that a horse, as used in that connection, "was not reserved because he was a horse, but because of his useful qualities, and his almost

indispensable services." The usefulness and services of a mule are identical with that of a horse, at least so far as the exemption is concerned; and as in common parlance the mule is hardly distinguishable from the horse, we are of the opinion that the word *horses*, as used in that statute, includes mules also.

This view of the case must dispose of the judgment of the District Court as rendered; and as the case will go back for another trial we deem it proper to say, the execution produced in evidence on the trial is wholly insufficient of itself to sustain the levy and seizure of the mule. In the first place, as there is no indorsement on the writ of the proper execution by the officer making the seizure, there is no evidence that the seizure had been made by virtue of that execution. Again, it is alleged by the plaintiff below that the execution was issued without a judgment to support it. This allegation threw the burden of proof upon the defendant, who would protect himself in his levy, to show, affirmatively, that there was such a judgment. But by the transcript from the justice's docket he proves that no judgment was in fact rendered, and without a judgment to support the execution it is absolutely null and void, and can confer no authority upon the officer to make the levy. (Criswell v. Ragsdale, 18 Texas, 444; Bailey v. Knight, 8 Texas, 61; and Walker v. Emerson, 20 Texas, 710.) Indeed, under the authority of the cases cited the execution should not have been admitted in evidence until the judgment, upon which that execution had issued, had been established. We think the court erred in overruling the motion for a new trial, and the judgment is therefore reversed and the cause remanded.

REVERSED AND REMANDED.