### In re BLANCHARD et al.

(District Court, E. D. North Carolina. December 31, 1907.)

1. BANKRUPTCY—PARTNERSHIP—MORTGAGE OF FIRM PROPERTY BY ONE PARTNER.

A mortgage given by one partner on partnership property, although with the consent of his copartner, cannot be enforced as against firm creditors in bankruptcy; nor has the court of bankruptcy any power to give it effect as as assignment of the mortgagor's right of exemption out of the partnership property.

2. SAME—EXEMPTIONS—NORTH CAROLINA STATUTE.

Under the personal property exemption law of North Carolina, in case of bankruptcy the bankrupt must select his exemption in kind, and cannot wait until the property has been sold and claim the maximum value of his exemption in money from the proceeds.

In Bankruptcy. On review of referee's decisions.

R. C. Lawrence and J. G. McCormick, for creditors.

PURNELL, District Judge. The record is again before the court, with the indorsement: "Order sent some time ago. Do not know why record was overlooked"—in handwriting of the district judge; but the order seems to have been lost, and, counsel having been heard, the cause must again be decided. The first question arising on the record is as to the validity of a mortgage from A. E. Howard to E. J. Johnson for $946.75, with interest from February 4, 1906, dated February 4, 1907; and, second, a mortgage from J. C. Blanchard to A. R. McEachan and J. A. Johnson, October 4, 1906 for $775.

As to the first mortgage from Howard to Johnson, February 4, 1907, the facts are, as testified to by R. C. Lawrence, Esq.: In January, 1906, Howard executed to Johnson his promissory note for $775, payable January 1, 1907, for money borrowed. The mortgage, executed February 4, 1907, was for the principal and interest of the note of 1906, and the sum of $125 advanced by Johnson to enable Howard to pay cost and attorney's fees in a proceeding in bankruptcy then about to be filed, and so used. Was it valid for the $125? It was made within the four months, but for a cash consideration, a loan in contemplation of bankruptcy; for it may be inferred, from the facts admitted and proved, that Johnson knew or had reason to believe the borrower was insolvent and contemplated bankruptcy, and he loaned the money for this purpose, i. e., to pay costs of filing fee expenses and attorney's fees. Attorney's fees paid by the bankrupt are not specially favored by the bankrupt act, as witness the provisions of section 60, subd. "d" (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3446]):

"If a debtor shall, directly or indirectly in contemplation of the filing of a petition by or against him pay money or transfer property to an attorney and counselor at law, solicitor in equity, or proctor in admiralty for services to be rendered, the transaction shall be re-examined by the court on petition of the trustee or any creditor and shall only be held valid to the extent of a reasonable amount to be determined by the court and the excess may be recovered by the trustee for the benefit of the estate."

The trustee files no such petition in the case at bar, and, it may be inferred, will not. The mortgage was given "with the consent of Blanchard." The mortgage and petition in bankruptcy bear the same date, though Mr. Lawrence says the mortgage was executed the day before the petition in bankruptcy was filed. Both were prepared the same day. The referee holds that as both of these mortgages were given by the individuals comprising the copartnership on the firm's property to secure an individual indebtedness, and not executed as a firm conveyance, and the mortgage of Howard to E. J. Johnson being largely to pay a pre-existing debt, to wit, $831.75, "the interests of the mortgagee in the fund in excess of the personal property exemption allowed by law are postponed to the rights of the firm's creditors generally, but will operate as an assignment of the personal property exemption which may be allowed to each bankrupt in the event the court should hold that the said bankrupts are entitled to their exemptions." This court has no jurisdiction over exemptions of bankrupts, except to allot them. In re Paramore & Ricks (D. C.) 156 Fed. 218.

The mortgage, executed the day before the petition to secure a pre-existing debt, was a preference; and this is now admitted by counsel, and cannot be proved. Section 67c (2), providing what liens shall be disallowed by the adjudication, provides:

"If the party or parties to be benefited thereby had reasonable cause to believe the defendant was insolvent and in contemplation of bankruptcy."

Subdivision "d" of this section seems to be an exception:

"Being given or accepted in good faith and not in contemplation of or in fraud of this act and for a present consideration which have been recorded according to law * * * shall not be affected by this act."

If referees will look to the bankrupt act as the chart of their duty and the law of the case, and not be confused by state decisions, it would be better for all concerned. The bankrupt act is an act of Congress passed in accordance with the Constitution (art. 1, § 8, cl. 4):

"Congress shall have power to establish uniform laws on the subject of bankruptcies throughout the United States."

And article 6 of the Constitution provides the acts of Congress which shall be passed in pursuance of the Constitution shall be the supreme law of the land.

Johnson seems, from the evidence, to have accepted the lien in good faith, not in contemplation of a fraud of the bankrupt act, and to have parted with his cash, a present consideration, and to have had his lien duly recorded, which brings the claim for $125 within the exception; but it may be said to be a "close shave," even were we dealing with individual estates, in which event the court would feel constrained to allow the claim to this extent against the estate of Blanchard as not affected by the adjudication. As to the ruling of the referee on this claim, he is reversed. We are dealing with partnership assets, not of the individuals.

As to the second claim, that of McEachan and Johnson, the mortgage seems to have been given and accepted before bankruptcy was contemplated, or there was any suspicion of insolvency, for money to

enable these young men to go into business, the manufacture of brick, more than four months before the adjudication, and under the express provisions of the act of July 1, 1898, the bankrupt act, is not affected by the passage of the act. But both of the foregoing liens are personal obligations secured by mortgages on the interest of the individuals in firm property. The court will not discuss this abstract question, which seems to have confused counsel and the referee, but simply hold the firm debts must be paid first out of the firm assets as provided in the bankrupt act, that separate accounts of firm debts and assets must be kept, and, if there is more than sufficient for this purpose, a marshaling of assets, as provided in section 5c. Loveland (3d Ed. p. 312), ably discusses this distinction between partnership and individual debts under the bankrupt act, citing the authorities, among others, McDaniel v. Stroud (decided by the Court of Appeals of this Circuit) 106 Fed. 486, 45 C. C. A. 446; and this has been the rule in bankruptcy since the decision of Lord Chancellor King in Re Cooke, 2 P. W. 500, affirmed by Lord Eldon in Ex parte Clay, 1 Ves. 813, and Ex parte Tuitt, 16 Ves. 193. It was enacted in the English bankrupt act of 1885, as it is now in the act of 1898. The partnership and the individuals composing it are distinct entities. In re Eagles & Crisp, 99 Fed. 695, 3 Am. Bankr. Rep. 733; In re Barden, 101 Fed. 553, 4 Am. Bankr. Rep. 31; In re Farley (D. C.) 115 Fed. 359. Hence, as far as the debts before mentioned, both being individual debts, they must, as to the firm or partnership assets, be postponed until the firm or partnership debts are paid and disallowed in this proceeding. Saying the liens were given with the consent of the other partner is not sufficient to make them partnership debts or bind partnership property. It should and must be evidenced by some consent or joinder in writing.

The third claim mentioned in the report is a mortgage executed by the partnership, Blanchard & Howard, to C. M. Fuller and H. B. Fuller, owned solely by C. M. Fuller, dated January 11, 1906, and recorded more than a year before filing the petition in bankruptcy, to secure $210. The chattels covered by this mortgage were sold by order of the former referee, now dead, for $360. The referee holds that said claim should have priority over the debts of general creditors. This, under the provisions of the bankrupt act cited and the general spirit of the act, was correct, and the referee is affirmed.

The claim of L. Shaw, as reported, is almost identical with the foregoing, except as to amount and property mortgaged. The amount of this debt was $250, with interest at 6 per cent. from November 1, 1906, secured by a mortgage on property sold under an order of the referee providing the lien should attach to the fund arising from the sale. The engine pledged in the mortgage sold for $425, and the brick mill $245. A like decision was rendered by the referee that the said claim have priority over the claims of general creditors. In this the referee, for the same reasons, is affirmed.

Counsel for the bankrupts "moved the court that the bankrupts be allowed their personal property exemptions out of the cash in the hands of the trustee, said exemption to be paid under the final distribution sheet herein." Counsel asked that testimony be taken to show the reason why the personal property exemption was not allotted in

kind, when counsel was sworn and attempted to explain by producing a letter from the former referee in which he says:

"I am not sufficiently familiar with the details of the case to say whether or not bankrupts will be benefited by a specific allotment at this time. If the bankrupts agree to the sale of the property as above suggested, I do not see how any question could arise, nor how they could be damaged."

The late referee was a good lawyer, well posted in bankrupt law, and no one would think of his attempting to mislead a brother attorney. I have no idea he did, or intended to do so. He probably was advertent to the law of personal property exemptions according to Const. N. C. art. 10, § 1, as construed by the Supreme Court of the state, and followed by this court under the provisions of the bankrupt act. That the debtor must select exempt property in kind, and then, where it is such as will enhance the sale of other property, such as staple articles in a stock of goods, he may, by consent, have the property or articles thus allotted sold by the trustee with the other personal property, and take the cash for which such goods so selected sold. In no event can he receive more than $500. There is no halo around personal property exemptions. They are simply exemptions, and are not handed out on a silver waiter. There is a burden resting on one claiming an exemption. He must claim it. This the bankrupts did not do in the way contemplated by law, but it may be inferred, without further effort than a letter to the referee by their attorney, made no effort in this behalf, but it may be concluded from the record by their silence and inaction assented to the sale free of incumbrance. The claim before the referee was too late, and even now essentials are not filed or shown. There is no consent on the part of either partner to two personal property exemptions being allowed, carved out of the meager assets of this estate. Neither partner shows or offers to show he has not another personal property exemption, independent of their partnership assets, both essential to an allotment. It is not a case for sympathy or a feeling or disposition to aid two young men who started into a venture on borrowed capital and failed. It is a question of law. Creditors lose. Why should those by whom they lose, by trying to aid, be allowed out of the wreck what they do not seem to have had before they started into the venture on borrowed capital? It is not law; hence cannot be allowed.

The recommendation of the referee that the personal property exemption of the individuals be allotted to them in cash is not and can not be adopted. This proceeding is by the firm, and there are firm debts sufficient to consume all the firm assets. The funds must be so applied.