## CITIES SERVICE OIL CO. v. NORTH RIVER INS. CO. et al.
### No. 13109.

Court of Civil Appeals of Texas.
Fort Worth.
March 29, 1935.

Rehearing Denied April 26, 1935.

Phillips, Trammell, Chizum, Estes & Edwards, Kenneth H. Jones, and James B. Henderson, all of Fort Worth, for appellant.

H. D. Payne, of Floydada, for appellees.

BROWN, Justice.

Cecil D. Gibbs, at all times within which the matters were had and done giving rise to this garnishment proceeding, was a married man, living with his wife and one minor son. The home in which they lived and all of their furniture, furnishings, and personal wearing apparel were destroyed by fire.

Insurance against loss by fire, of such personal property, was carried with North River Insurance Company, and before payment was made to Gibbs, under his insurance contract, appellant, Cities Service Oil Company, being a judgment creditor of Gibbs, sued out a writ of garnishment against the insurer, in the district court of Tarrant county.

The insurer answered, admitting owing Gibbs the sum of $700, and paid same into the treasury of the court, praying that the court award such sum of money to whomsoever same may be found to lawfully belong.

Gibbs replevied the money, and, in the suit, prayed that the proceeds of the insurance policy be exempted to him, because of the character of personal property covered by the insurance contract and destroyed in the fire.

Appellant, garnishing creditor, pleaded that so much of the policy of insurance as covered the wearing apparel owned by Gibbs, his wife, and minor son, is not exempt, and asked judgment for such sum.

It is agreed by all parties that the sum of $211.50 represents the amount paid into the court's treasury, which covers the loss occasioned by the destruction of the wearing apparel owned by the Gibbs family.

The cause was tried to the court, and judgment was rendered that appellant take nothing against the garnishee, and specifically holding the proceeds of the insurance policy exempt.

It is interesting to find that there is no provision in the Constitution of the Republic of Texas for any statute exempting from forced sale any portion of the property belonging to the head of a family, or belonging to any other citizen, and yet as early as January 26, 1839, the lawmaking body of the Republic passed an exemption statute in the following language: "From and after the passage of this act, there shall be reserved to every citizen or head of a family in this republic, free and independent of the power of a writ of fieri facias, or other execution issuing from any court of competent jurisdiction whatever, fifty acres of land, or one town lot, including his or her homestead, and improvements not exceeding five hundred dollars in value, all household and kitchen furniture (provided it does not exceed in value two hundred

Itry

dollars), all implements of husbandry (provided they shall not exceed fifty dollars in value), all tools, apparatus, and books belonging to the trade or profession of any citizen, five milch cows, one yoke of work-oxen or one horse, twenty hogs, and one year's provisions; and that all laws and parts of law contravening or opposing the provisions of this act, be and the same are hereby repealed: Provided, the passage of this act shall not interfere with contracts between parties heretofore made." Paschal's Dig. art. 3798, p. 628.

When Texas negotiated with the United States of America and became a state therein, she planned and adopted her first State Constitution to meet the requirements of the Federal Constitution, and we find the following provision concerning personal exemptions in Paschal's Digest, vol. 1, art. 7, § 22: "The Legislature shall have power to protect by law from forced sale a certain portion of the property of all heads of families. The homestead of a family not to exceed two hundred acres of land (not included in a town or city) or any town or city lot or lots in value not to exceed two thousand dollars, shall not be subject to forced sale, for any debts hereafter contracted, nor shall the owner, if a married man, be at liberty to alienate the same, unless by the consent of the wife, in such manner as the Legislature may hereafter point out."

The Constitution, as amended in 1866, and made to take effect in 1869, made no material changes as to personal property exemptions.

The following statutes were enacted in 1866 to carry out the provisions of the Constitution:

Article 6831, Paschal's Digest, vol. 2: "There shall be reserved to every citizen, head of a family, or householder, being a citizen in this state, free and independent of the power of a writ of fieri facias, or other execution issuing from any court of competent jurisdiction whatever, two hundred acres of land, including his or her homestead, (not included in a town or city) or any town or city lot or lots, in value not to exceed two thousand dollars at the time of their destination [designation?] as a homestead, nor shall the subsequent increase in the value of the homestead, by reason of improvements or otherwise, subject the same to forced sale; household and kitchen furniture, not to exceed five hundred dollars in value; all implements of husbandry; all

tools, apparatus, and books, belonging to any trade or profession; five milch cows, two yoke of work oxen, and two horses, one wagon, twenty hogs, twenty head of sheep, and one year's supply of provisions; all saddles, bridles, and harness necessary for the use of the family."

Article 6832, Paschal's Digest, vol. 1: "There shall, in like manner, be reserved to every citizen not a head of a family, the following property, towit: One horse, bridle, and saddle; all wearing apparel; all tools, books, and apparatus belonging to his trade or profession."

The Constitution of 1876 contains the following provision: Article 16, § 49: "The legislature shall have power, and it shall be its duty, to protect by law from forced sale a certain portion of the personal property of all heads of families, and also of unmarried adults, male and female."

The statutes, in the forms as are now found in our State Code (Rev. St. 1925, arts. 3832, 3835) appear in the Revised Civil Statutes of Texas, passed by the 32nd Legislature at its Regular Session in 1911, and are as follows:

Article 3785: "The following property shall be reserved to every family, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as hereinafter provided:

"1. The homestead of the family.
"2. All household and kitchen furniture.
"3. Any lot or lots in a cemetery held for the purpose of sepulture.
"4. All implements of husbandry.
"5. All tools, apparatus and books belonging to any trade or profession.
"6. The family library and all family portraits and pictures.
"7. Five milk cows and their calves.
"8. Two yoke of work oxen, with necessary yokes and chains.
"9. Two horses and one wagon.
"10. One carriage or buggy.
"11. One gun.
"12. Twenty hogs.
"13. Twenty head of sheep.
"14. All saddles, bridles, and necessary harness for the use of the family.
"15. All provisions and forage on hand for home consumption.
"16. All current wages for personal services."

Article 3788: "The following property shall be reserved to persons who are not constituents of a family, exempt from at-

tachment, execution and every other species of forced sale:

"1. A lot or lots in a cemetery, held for the purpose of sepulture.

"2. All wearing apparel.

"3. All tools, apparatus and books belonging to any trade or profession.

"4. One horse, saddle and bridle.

"5. Current wages for personal services."

It will be noted that the framers of the present organic law, in dealing with the power delegated to the Legislature to provide for exemptions to heads of families, did more than make the matter of exemptions permissive; they made it mandatory.

In adopting the policy of giving liberal construction to these exemption statutes, the Supreme Court, in 1855, when considering the case of Cobbs v. Coleman, 14 Tex. 594, 598, declared: "It appears, then, from the Statute, that Waggoner's horse was not liable to the attachment. The question is, whether exemption of the horse will extend to the saddle and bridle. It is very clear that by these reservations, the Legislature intended a real, substantial benefit. A horse was not reserved because he was a horse, but because of his useful qualities and his almost indispensable services; but what would be the benefit of a horse without shoes, or without saddle and bridle, or without gears if employed for purposes of agriculture. It cannot be presumed that the Legislature intended that a debtor should be reduced to the most primitive usage of riding without saddle or bridle; yet, this may often be the only alternative, if such appendages be held not exempt from execution. It would seem that by fair construction, the grants in the Statute must include, not only the subject itself, but everything absolutely essential to its beneficial enjoyment. As, for instance, the grant of the five milch cows must include the calves during the season of milking, though this is not expressed in the Act. Implements of husbandry and tools, apparatus, etc., belonging to a trade or profession, are reserved. Now, what more necessary implement of husbandry than a bridle to a plow horse? or what more necessary apparatus can there be, to any trade, than a saddle to an owner of a horse, and especially in this State, where, as a general rule, every man rides, and where there is more necessity for such service from the horse, than in other States? A bridle and saddle are as indispensable to the use of a horse, as a yoke is to a pair of oxen. They must be regarded as included within the grant, and as, consequently, exempt from execution. Of course, these articles must be of a plain description. All the implements of husbandry are not allowed to exceed fifty dollars in value, and the whole policy of the Act is, to subtract no more from the creditor, than is essential to the moderate support of the debtor; and while the law would not permit the horse to be so stripped as to be almost valueless, nor suffer the spirit of the freeman, who owns him, to be exposed to unnecessary humiliation, yet extravagance would not be justified, and bridles and saddles, beyond a reasonable value, might be exposed to seizure. As to martingales, the maxim of deminimis non curat lex may very well apply. They are not so generally essential as a bridle and saddle, but they may frequently, and to save executive officers from difficulties, who can have no certain tests, martingales may be regarded as included within the reservation of the horse."

Why the lawmaking bodies of Texas specifically mentioned "all wearing apparel" belonging to "persons who are not constituents of a family," and made no such mention when providing for exemptions "to every family," does not disturb us, in the light of the humane and wholesome decisions handed down by the appellate courts of Texas.

These courts have held that a dray is a "wagon," in Cone v. Lewis, 64 Tex. 331, 53 Am. Rep. 767; a diamond ring is "wearing apparel," in First Nat. Bank v. Robinson (Tex. Civ. App.) 124 S. W. 177; an automobile is a "carriage," in Parker v. Sweet, 60 Tex. Civ. App. 10, 127 S. W. 881; a piano is "household furniture," in Alsup v. Jordan, 69 Tex. 300, 6 S. W. 831, 5 Am. St. Rep. 53; that with the exempted horse there is included a "bridle and saddle," "shoes" upon the horse's feet, and a "rope" about his neck, as well as "martingales," in Cobbs v. Coleman, supra, and Dearborn v. Phillips, 21 Tex. 449. And these decisions rest in part upon the fact that they are necessary for the beneficial enjoyment of the property exempted by actual designation.

An unbroken colt is held to be a "horse," in Hall v. Miller, 21 Tex. Civ. App. 336, 51 S. W. 36; and the lowly mule, so useful and so seldom ornamental, the butt of the jester, who spoke contemptuously of him as being "without pride of ancestry or hope of posterity," is held to be a "horse," in Allison v. Brookshire, 38 Tex. 199. And Mr.

Justice Willson, in the case of Robinson v. Robertson, reported in 2 Willson, Civ. Cas. Ct. App. § 253, page 193, declares the uncouth jackass, at whose feet lies the responsibility for the useful mule's existence, to be a "horse."

▆ The remedial character and meritorious purposes of the exemption statutes have moved appellate courts to deal with them most considerately, and Mr. Justice Willson points to the fact that "the rule is well supported and is constantly growing in favor, that exemption laws, being remedial, beneficial and humane in their character, must be liberally construed."

The Supreme Court, in the Cobbs Case, supra, speaking through Mr. Justice Hemphill, declared that "the law would not permit the horse to be so stripped as to be almost valueless, nor suffer the spirit of the freeman, who owns him, to be exposed to unnecessary humiliation," and with such pronouncement we heartily agree.

If the law is thuswise so jealous of the pride and feelings of its freemen as that it will not permit a creditor to strip from the freeman's horse, the bridle, saddle, rope halter, and even the martingales, with which the animal is accoutered, how much more readily should the law, with jealous earnestness, say to the freeman: "No creditor shall strip from the sacred body of the wife of your bosom, from the tender form of the precious child she bore you, or from your own frame, the clothing you have purchased with your earnings to hide your nakedness and that of your beloved dependents. This unnecessary humiliation shall never be visited upon you, with the consent of the law."

To hold otherwise is to demand of the freeman that he go out in public, to fill his place in society and earn a living for himself and his own, exposed to the ridicule of his fellowman and subjected to the cold arm of the law because of indecent exposure in a public place; and his wife and children must find some place of seclusion, or be forced to similarly suffer.

In our opinion, the Legislature of Texas did not specifically mention wearing apparel as being exempt to families, because the thought of stripping the breadwinner and his dependents, to satisfy an insistent creditor's demands, is so inhumane and repulsive that they deemed it unnecessary to specifically throw this safeguard about its citizens, on whose shoulders rest the burdens of the proper support of others.

They little dreamed that any such act would ever be attempted, and, so far as we can learn, this is the first time the attempt has been made in Texas.

▆ But there is yet another reason why the exemption law should be construed as we construe it in this case. The lawmakers have specifically exempted the "current wages" belonging to the family.

Obviously, this exemption was provided to enable the wage-earner to purchase the necessities of life for his dependents and for himself. Nothing is more necessary to the comfort, convenience, and self-respect of a citizen than clothing with which to hide his nakedness and protect his person. This the lawmakers must have had in mind.

All these conclusions met in the bosom of the learned trial judge who held that the proceeds of the insurance policy which covered the wearing apparel owned by Gibbs and his family was exempt. We hold this judgment sound.

The assignment of error presented by the appellant is overruled, and the judgment of the district court is affirmed.