**In re RICHARDS.**

No. 2145.

District Court, S. D. Texas, Houston Division.

Feb. 11, 1946.

Harry W. Freeman, of Houston, Tex., for bankrupt.

Murray B. Jones, of Houston, Tex., for himself and Fannin Realty Co.

H. A. Phillips, of Houston, Tex., trustee.

Elbert Roberts, of Houston, Tex., referee in bankruptcy.

KENNERLY, District Judge.

This is a petition by the bankrupt, Charles Eugene Richards, a married man and head of a family, to review an order of a Referee in Bankruptcy holding that a diamond ring belonging to the bankrupt is not exempt under the Exemption Laws of Texas, Title 57, Vernon's Civil Statutes of Texas.

The facts are substantially these:

(a) The bankrupt, a resident of Houston, Texas, in this District and Division, and an employee of a furniture company, filed his petition in bankruptcy November 6, 1945, was on that date adjudged a bankrupt, and the case referred to a Referee. He did not list the ring in question in his original petition and schedules.

(b) At the first meeting of creditor, the bankrupt was present, and was examined. He was wearing the ring on his finger, and the Referee directed him to deliver it to the Trustee. He did, and it has since been in possession of the Trustee.

(c) Thereafter the bankrupt was permitted to amend, and amended, his schedules, and listed the ring and also showed an indebtedness to J. Marion West, secured by a chattel mortgage on the ring and a 1939 Tudor DeLuxe Ford.

(d) The Trustee, in reporting and setting aside the exemptions of the bankrupt, refused to include therein the ring as exempt, and the bankrupt filed his exceptions to the Trustee's report. After a hearing, the Referee found and held the ring not to be exempt.

(e) The bankrupt acquired the ring about 1929, and has since constantly worn it on his finger. Three or four years ago, the stone originally in the ring was exchanged by bankrupt for a more valuable stone, which is now in the ring. The Referee finds the ring cost $750, and that its present value is $1500. The ring was acquired by the bankrupt after he had incurred the indebtedness to Murray B. Jones, which is the principal indebtedness of the estate. This indebtedness to Jones is evidenced by a judgment in favor of Jones against the bankrupt, dated October 21, 1929.

1. Prior to the Act of the Texas Legislature of May 6, 1935, it is doubtful if there was a Texas Statute under which a ring such as is this could lawfully be set aside to a bankrupt as exempt. By such Act, Article 3832, Vernon's Civil Statutes of Texas was amended by providing for the exemption to families of *"All wearing apparel."* Bankrupt claims the ring is wearing apparel within the meaning of such Act.

But citing Lyon & Matthews Co. **v.** Praetorians, Tex.Civ.App., 142 S.W. 29, Edwards v. Kearzey, 96 U.S. 595, 24 L.Ed. 793, The Queen, D.C., 93 F. 834, 835, and other similar cases, the Trustee and creditors take the position that since the bankrupt's debt to Creditor Jones was contracted before bankrupt acquired the ring, and before the passage of the Act of 1935, the question of the exemption of the ring must be decided in accordance with the law as it was at the time the debt was contracted and/or bankrupt acquired the ring. That position, however, is not meritorious. The Bankrupt Act provides that exemptions shall be allowed and must be set aside in accordance with *the laws in force at the time of the filing* of the petition in bankruptcy.[1] This, a Court of Bankruptcy has limited jurisdiction. It may only gather in and administer such assets of a bankrupt as are permitted by the Bankruptcy Act. Any property exempt to the bankrupt at the time of the filing of his petition must be set aside to him. If the ring is set aside to the bankrupt as exempt, it is not necessary to here discuss or decide what rights, if any, under the principles of law discussed in the cited decisions, Creditor Jones may thereafter have and assert in other forums against the Bankrupt and/or the ring.

2. No Texas Court has as yet construed the Act of 1935, exempting to families *"all wearing apparel,"* and, as stated, the Trustee and creditors insist that even though bankrupt constantly wore the ring on his finger for a number of years, it is not "wearing apparel" and, therefore, not exempt to him.

Exemption Statutes have ever been favored Legislation in Texas. As early as 1839, the Congress of the Republic of Texas passed an Act, exempting from execution, etc., to heads of families certain personal property. All the Constitutions, except the Constitution of the Republic, have permitted or required the law-making body

---

[1] Section 24, Title 11, U.S.C.A., is as follows:

"Sec. 24. Exemptions of bankrupts. This title shall not affect the allowance to bankrupts of the exemptions which are prescribed by the laws of the United States or by the State laws in force *at the time of the filing of the petition* in the State wherein they have had their domicile for the six months immediately preceding the filing of the petition, or for a longer portion of such six months than in any other State: Provided, however, That no such allowance shall be made out of the property which a bankrupt transferred or concealed and which is recovered or the transfer of which is avoided under this title for the benefit of the estate, except that, where the voided transfer was made by way of security only and the property recovered is in excess of the amount secured thereby, such allowance may be made out of such excess."

to provide for such exemptions. The wording of the present Constitution (1876) is shown in the margin.[2] By the Act of August 15, 1870,[3] there was exempted to every family, all household and kitchen furniture, all implements of husbandry, all tools and apparatus belonging to any trade or profession, all books belonging to private or public libraries, certain livestock, etc. There was exempted to every citizen not a head of a family, one horse, bridle and saddle, all wearing apparel, all tools, apparatus and books belonging to his private library, etc. This Act became Articles 3832 and 3835 in the Texas Revised Statutes of 1925 (Vernon's Annotated Texas Civil Statutes). There was no change in these exemptions material to this discussion until the Act of May 6, 1935, when Article 3832 was amended, and there was exempted to families *"All wearing apparel,"* etc. The emergency clause quoted in the margin[4] shows the reasons for the passage of this Act and this Amendment.

3. Since no Texas Court has so far construed the Act of 1935, exempting to families "all wearing apparel," it will I think be found helpful to look to the decisions of the Texas Courts construing exemptions generally.

Since the days of the Republic, Laws allowing exemptions have been most liberally construed. Cobbs v. Coleman, 14 Tex. 594; Rodgers v. Ferguson, 32 Tex. 533; Helm v. Pridgen, Tex.Civ.App., 1 White & W. Civ. Cas.Ct.App. §§ 643, 644; Betz v. Maier, 12 Tex.Civ.App. 219, 33 S.W. 710; Rock Island Plow Co. v. Alten, Tex.Civ.App., 111 S.W. 973; Parker v. Sweet, 60 Tex.Civ. App. 10, 127 S.W. 881; Patterson v. English, Tex.Civ.App., 142 S.W. 18; Cities Service Oil Co. v. North River Ins. Co., 130 Tex. 186, 107 S.W.2d 994; In re Hawthorne, D.C., 45 F.Supp. 374; J. M. Radford Grocery Co. v. McKean, Tex.Civ. App., 41 S.W.2d 639; Pickens v. Pickens, Tex.Civ.App., 52 S.W.2d 1087, set aside on other grounds 125 Tex. 410, 83 S.W.2d 951; Cities Service Oil Co. v. North River Ins. Co., Tex.Civ.App., 82 S.W.2d 184, reversed on other grounds 130 Tex. 186, 107 S.W.2d 994; Illich v. Household Furniture Co., Tex.Civ.App., 103 S.W.2d 873; Moore v. Neyland, Tex.Civ.App., 180 S.W.2d 658; Gaddy v. First Nat. Bank of Beaumont, Tex.Civ.App., 283 S.W. 277, certified questions answered 115 Tex. 393, 283 S.W. 472.

The opinion in the case of Cities Service Oil Co. v. Insurance Co., Tex.Civ.App., 82 S.W.2d 184, 186, which arose prior to the passage of the Act of May 6, 1935, is so enlightening as to the history of the holdings of the Texas Courts on the subject of Exemptions, that I quote therefrom:

"Why the lawmaking bodies of Texas specifically mentioned 'all wearing apparel'

---

[2] Article XVI, Sec. 49, of the Constitution of Texas of 1876, Vernon's Ann.St. provides that:

"The Legislature shall have power, and it shall be its duty, to protect by law from forced sale a certain portion of the personal property of all heads of families, and also of unmarried adults, male and female."

[3] Section 2 of the Act of August 15, 1870, is as follows:—

"Sec. 2. There shall also be reserved to every family in this State, free and exempt from forced sale for debts, the following property: All household and kitchen furniture; all implements of husbandry; all tools and apparatus belonging to any trade or profession, and all books belonging to private or public libraries; five milch cows and calves; two yoke of work oxen; two horses and one wagon; one carriage or buggy; one gun; twenty hogs; twenty head of sheep; all provisions and forage on hand for home consumption; all saddles, bridles and harness necessary for the use of the family; and to every citizen not a head of a family, one horse, bridle and saddle, all wearing apparel, all tools, apparatus and books belonging to his private library."

[4] "The fact that many upright citizens who have suffered unforeseen calamities, and are being unduly pressed by creditors who are demanding payments for their debts and are seizing and taking advantage of every opportunity to attach, garnishee and sequestrate all articles of personal property which are the only possessions of many families and not now exempt by law, and the fact that these articles when sold will bring little money, and the fact that a single man is allowed his wearing apparel to be exempt while the heads of families in some instances in this State are having their wearing apparel taken away from them by creditors, * * * create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read in each House on three several days be suspended, and the same is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted."
Acts Tex.1935, c. 145, § 2.

belonging to 'persons who are not constituents of a family,' and made no such mention when providing for exemptions 'to every family,' does not disturb us, in the light of the humane and wholesome decisions handed down by the appellate courts of Texas.

"These courts have held that a dray is a 'wagon,' in Cone v. Lewis, 64 Tex. 331, 53 Am.Rep. 767; a diamond ring is 'wearing apparel,' in First Nat. Bank v. Robinson, Tex.Civ.App., 124 S.W. 177; an automobile is a 'carriage,' in Parker v. Sweet, 60 Tex. Civ.App. 10, 127 S.W. 881; a piano is 'household furniture,' in Alsup v. Jordan, 69 Tex. 300, 6 S.W. 831, 5 Am.St.Rep. 53; that with the exempted horse there is included a 'bridle and saddle,' 'shoes' upon the horse's feet, and a 'rope' about his neck, as well as 'martingales,' in Cobbs v. Coleman, supra, and Dearborn v. Phillips, 21 Tex. 449. And these decisions rest in part upon the fact that they are necessary for the beneficial enjoyment of the property exempted by actual designation.

"An unbroken colt is held to be a 'horse,' in Hall v. Miller, 21 Tex.Civ.App. 336, 51 S.W. 36; and the lowly mule, so useful and so seldom ornamental, the butt of the jester, who spoke contemptuously of him as being 'without pride of ancestry or hope of posterity,' is held to be a 'horse,' in Allison v. Brookshire, 38 Tex. 199. And Mr. Justice Willson, in the case of Robinson v. Robertson, reported in 2 Willson Civ.Cas. Ct.App. § 253, page 193 declares the uncouth jackass, at whose feet lies the responsibility for the useful mule's existence, to be a 'horse.'

"The remedial character and meritorious purposes of the exemption statutes have moved appellate courts to deal with them most considerately, and Mr. Justice Willson points to the fact that 'the rule is well supported and is constantly growing in favor, that exemption laws, being remedial, beneficial and humane in their character, must be liberally construed.'

"The Supreme Court, in the Cobbs case, supra, speaking through Mr. Justice Hemphill, declared that 'the law would not permit the horse to be so stripped as to be almost valueless, nor suffer the spirit of the freeman, who owns him, to be exposed to unnecessary humiliation,' and with such pronouncement we heartily agree.

"If the law is thuswise so jealous of the pride and feelings of its freemen as that it will not permit a creditor to strip from the freeman's horse, the bridle, saddle, rope halter, and even the martingales, with which the animal is accoutered, how much more readily should the law, with jealous earnestness, say to the freeman: 'No creditor shall strip from the sacred body of the wife of your bosom, from the tender form of the precious child she bore you, or from your own frame, the clothing you have purchased with your earnings to hide your nakedness and that of your beloved dependents. This unnecessary humiliation shall never be visited upon you, with the consent of the law.'"

4. It will also be found helpful to examine the decisions of Texas Courts construing Statutes similar to the Act of 1935.

In Alsup & Thompson v. Jordan, 69 Tex. 302, 6 S.W. 831, 833, 5 Am.St.Rep. 53, the provision for the exemption of "all household and kitchen furniture," found in the Act of 1870 (Article 3832, Texas Statutes), was construed. The particular question was whether a piano was exempt to a family. It was there held to be the purpose of the Legislature to exempt all household furniture, regardless of its value and regardless of whether it is *necessary, convenient,* or *ornamental.* I quote the language of Justice Stayton:

"It is evident that the value of the piano entered into the verdict, and it is urged that the charge of the court in regard to its exemption was erroneous, and that, as matter of law, it was properly subject to forced sale. The statute provides as follows: 'The following property shall be reserved to every family, exempt from attachment or execution, and every other species of forced sale for the payment of debts: * * * all household and kitchen furniture.' Rev.St. art. 2335 [Vernon's Ann. Civ.St. art. 3832]. The general definition of 'household,' when used as a qualifying word, is pertaining or belonging to the house or family, and it is so evidently used in the statute under consideration, the purpose of which is to exempt articles belonging to a family. And in such a connection the word 'furniture' is one of *very broad signification,* and, according to lexicographers, embraces a supply of *necessary, convenient,* or *ornamental* articles with which a residence is equipped. The statute declares that 'the ordinary signification shall be applied to words, except words of art or words connected with a particular trade or subject-matter, when they have the

signification attached to them by experts in such art or trade, or with reference to such subject-matter.' Rev.St., art. 3138 [Vernon's Ann.Civ.St. art. 10]."

Here, it is claimed that the ring was part of Bankrupt's wearing apparel. It is clear that if, strictly speaking, it was not "necessary" to his wearing apparel, it was "convenient" and/or "ornamental."

The case of First National Bank of Eagle Lake v. Robinson, Tex.Civ.App., 124 S.W. 177, 179, arose under the law exempting "all wearing apparel" to single men (Article 3835). The matter under investigation was whether or not one Canaday, apparently a single man and owner of a diamond ring, was insolvent on a certain date. Canaday wore the ring on his finger as part of his apparel, and the Court uses this language:

"As to Canaday having a diamond ring which he wore, we fail to appreciate the reasoning which would subject it to execution. *If worn by the owner, it was a constituent part of his attire, and in our judgment is within what the Legislature meant to include by the term 'wearing apparel.'* Rings are customarily worn, and under appellee's theory of the exemption a sheriff with an execution could remove the pendants from a lady's ears, or a badge from the veteran's coat."

The Trustee and creditors strongly attack this case, but it appears to me to have been correctly decided, and is very persuasive here. It is cited with approval in Cities Service Oil Co. v. Insurance Co., supra.

Other interesting and helpful cases are Patterson v. English, Tex.Civ.App., 142 S.W. 18, 19; In re Evans & Co., D.C., 158 F. 153; In re Smith, D.C., 96 F. 832; Cobbs v. Coleman, 14 Tex. 594, 597; Rodgers v. Ferguson, 32 Tex. 533.

5. I have examined other cases cited.

All that was decided in Rivas v. Noble, 5 Cir., 241 F. 673, was that there was no statute of Florida exempting a diamond ring worn on the finger of a bankrupt, and, therefore, the Bankrupt Court could not set it aside to him as exempt. At the time Langever v. Stitt, 5 Cir., 237 F. 83, was decided, it is probable there was no law in force in Texas exempting to the head of a family wearing apparel or a diamond ring, etc. The same may be said of Judge Hutcheson's opinion as District Judge in the unreported case of Ramon Otto, Jr.,

Bankrupt. The following cited cases seem to throw no special light on the question: McNabb v. Terminal Bldg. Corp. of Dallas, Tex.Civ.App., 93 S.W.2d 189; Bow v. Hodges, Tex.Civ.App., 101 S.W.2d 1043; Dodge v. Knight, Tex.Sup., 16 S.W. 626; Vought v. Kanne, 8 Cir., 10 F.2d 747; In re Miller, 8 Cir., 74 F.2d 86; Ralph v. Cox, 1 Cir., 1 F.2d. 435; In re Gemmell, D.C., 155 F. 551; In re Blanchard, D.C., 161 F. 793; In re Sachs, 3 Cir., 96 F.2d 823; In re Deacon, D.C., 27 F.Supp. 296.

My conclusion is that the ring in question is exempt to the Bankrupt, Charles Eugene Richards, and that the Referee was in error in declining to set it aside to him. It follows that an Order should enter, reversing the Order entered by the Referee, and declaring the ring to be exempt, and directing the Trustee to deliver it to the Bankrupt.

Let such an order be prepared and presented.