**In re Nancy Kay REED, Debtor.**

**Bankruptcy No. 387–31414–HCA–13.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Aug. 10, 1988.

**604**

Rosemary J. Zyne, Dallas, Tex., for debtor/movant.

Jack O'Boyle, Jordan, Dunlap & Prather, Dallas, Tex., for Jordan, Dunlap and Prather/respondent.

## MEMORANDUM OPINION

HAROLD C. ABRAMSON,
Bankruptcy Judge.

On for consideration is Debtor's Amended Objection to Claim. The Court is asked to determine whether the claim in question is secured by virtue of a prejudgment writ of garnishment issued in conjunction with a state court action prior to the filing of bankruptcy, garnishing certain coins and jewelry belonging to the Debtor. In making this determination, the Court is presented with two questions: (1) whether jewelry can be claimed as exempt under TEX.PROP.CODE.ANN.  § 42.002(3)(C) (Vernon 1984); and (2) whether the jewelry and the coins in question were held in *custodia legis* and thereby exempt from execution, at the time the writ of garnishment issued.

After consideration of the briefs and pleadings filed by counsel and hearing oral arguments and a review of the applicable authorities, the Court answers both questions in the affirmative and finds the claim is unsecured.

## FINDINGS OF FACT

1. The Debtor, Nancy Kay Reed, placed certain property in a safe deposit box in a bank located in Dallas, Texas to protect the property from seizure by her estranged husband. The property consisted of a gold and diamond wedding band, a pair of gold ring guards, a diamond cluster ring, a gold and diamond crab pin, a gold and diamond free flowing pin, a bag of silver dimes with a face value of $400.00, and one gold Krugerrand.

2. The value of the property is approximately $8,700.00.

3. Prior to placing the jewelry in the safe deposit box, Ms. Reed wore the rings on a daily basis and the pins on a less frequent but regular basis.

4. On or about October 5, 1982, A.J. Reed, the husband of the Debtor, removed the contents of the safe deposit box.

5. The Debtor subsequently hired the Dallas law firm of Jordan, Dunlap and Prather ("JD & P"), the claimants in the present case, to represent her in a civil conversion action to recover the coins and jewelry from her husband.

6. Robert Prather was the attorney of record in the Debtor's civil conversion suit which bore Cause No. 82–14114–E/R, and was filed in the 101st District Court of Dallas County, Texas. The conversion action was subsequently consolidated with a divorce action in the 254th District Court of Dallas County Texas.

7. Robert Prather and Douglas Barnes, the attorney for A.J. Reed, agreed to place the contested property in lock box 581 at Capital Bank, Dallas, Texas, pending the

outcome of the conversion action, in lieu of placing the property in the Registry of the Court.

8. After approximately three years, the dispute over the property remained unsettled, and Ms. Reed dismissed Robert Prather as her attorney and demanded that he remove himself as trustee of the lock box and its contents. Mr. Prather refused to do so.

9. On May 8, 1986, Robert Prather filed an intervention action in Debtor's ongoing divorce suit, Cause No. 86–6691–R, in the 254th District Court of Dallas County, Texas.

10. On May 8, 1986, Robert Prather served Capital Bank with a prejudgment writ of garnishment garnishing Nancy Reed's interest in the contents of lock box 581.

11. A judgment was issued in conjunction with the divorce action on January 14, 1987, in which the contents of lock box 581, Capital Bank, Dallas, were declared the sole and separate property of the Debtor.

12. The January 14, 1987 judgment further ordered that the law firm of Jordan, Dunlap and Prather recover from Nancy Reed the sum of $41,912.80 which included $26,418.00 in principle, $2,494.80 in prejudgment interest on the principle, $13,000.00 in attorney's fees plus post judgment interest on the total judgment at the rate of 10% per annum until paid plus court costs.

13. The Debtor filed a bankruptcy petition in the Northern District of Texas on March 3, 1987.

14. JD & P filed their proof of claim on April 10, 1987.

15. On April 10, 1987, JD & P also filed a Motion to Modify Automatic Stay, requesting this Court to modify the stay to allow the Debtor to perfect her appeal from the state court judgment if she so desired and to consequently authorize the running of the applicable appeal period to allow the judgment to become final and unappealable if the Debtor chose not to pursue an appeal.

16. This Court entered its Order Modifying Automatic Stay on May 6, 1987, allowing the running of any time limits for the filing of an appeal.

17. The state court judgment became final and non-appealable in all respects on or before August 5, 1987.

18. On August 5, 1987, JD & P filed a Motion for Relief from Stay, seeking permission to continue with the garnishment action and take possession of the disputed property, in partial satisfaction of its claim.

19. In her Response to the Motion for Relief from Stay, filed August 14, 1987, the Debtor asked the Court to determine the status of JD & P's claim before the Court ruled on the Motion.

20. On October 27, 1987, the Debtor filed her Objection to Claim, alleging that the attorneys fees charged by the claimants were excessive, and further arguing that the prejudgment writ of garnishment constituted an invalid lien because the property was held in *custodia legis* at the time the writ issued, and was therefore exempt from garnishment.

21. Oral arguments were heard on June 16, 1988, wherein the parties argued the issues addressed in this opinion.

## DISCUSSION OF THE LAW

### a. Jewelry as exempt property under Texas Law

Prior to January 1, 1984, it was well settled in Texas that jewelry was exempt from execution for debts as "wearing apparel" pursuant to Article 3832 of the Texas Revised Civil Statutes. TEX.REV.CIV. STAT.ANN. art. 3832(17) (Vernon 1966) (repealed). *See In re Richards*, 64 F.Supp. 923 (S.D.Tex.1946); *First National Bank of Eagle Lake v. Robinson,* 124 S.W. 177 (Tex.Civ.App.–San Antonio 1910, no writ); *Hickman v. Hickman*, 228 S.W.2d 565 (Tex.Civ.App.–Eastland) *aff'd* 149 Tex. 439, 234 S.W.2d 410 (1950). Jewelry could be claimed as exempt even though it was worn only from time to time and although it was occasionally pledged as security for loans. *Hickman*, 234 S.W.2d at 414.

In 1983, however, the Texas exemption statutes were codified and the word clothing was substituted for the prior term exempting "all wearing apparel." TEX. PROP.CODE ANN. § 42.002(3)(C) (Vernon 1984). As a result, the courts must now determine whether this change was intended to narrow the scope of the exemption or whether the revisors changed the language merely in an attempt to modernize or simplify the statute.

Recently, Judge Clark of the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, addressed this question and found that jewelry is no longer exempt under the new Property Code. *In re Fernandez*, 2 T.B.C.R. 206 (Bankr. W.D.Tex.–San Antonio, 1987). Judge Clark stated that the old Texas cases interpreting the statutes as allowing the jewelry exemption were examples of judicial gloss on the statute and "were adornments which hung on the word 'wearing.' That word is now gone from the statute and with it the justification for the gloss which once made jewelry exempt." *Id.*

■ This analysis, however, fails to consider a maxim of general application long accepted by Texas Courts:

All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts.

*McBride v. Clayton*, 140 Tex. 71, 74, 166 S.W.2d 125, 128 (1942); *Welch v. State Department of Highways and Public Transportation*, 739 F.2d 1034, 1036 (5th Cir.1984). Since we must assume the legislature was familiar with the long accepted interpretation of the previous statute, the question then becomes whether the legislature intended the change in wording to work a substantive change in the law as it existed prior to codification.

In ascertaining the true intention of the legislature, the legislative history of a statute is "the most fruitful source of instruction as to it's proper interpretation." *Graff Chevrolet Company v. Campbell*, 343 F.2d 568, 571 (5th Cir.1965) *citing Flora v. United States*, 362 U.S. 145, 151, 80 S.Ct. 630, 633, 4 L.Ed.2d 623 (1960). It is very clear from statements made during the legislative hearings surrounding the codification, that the revisors had no intention of changing prior law. When questioned by the Chairman of the Senate Finance Committee as to whether there would be complaints that the law was being changed by the codification, Senator Sam Kitret, the chief revisor with respect to the property code, made the following statement:

I honestly don't believe so. We've made a very diligent effort to not make any kind of substantive changes in the law. As you know, ... that is our primary concern in the process of putting together one of these code projects and we always employ the most conservative possible rationale in the event there is a possible suggestion that we may have made a substantive change.

*Hearing on Senate Bill 748 before the Senate Finance Committee*, (April 26, 1983).

In addition, the Chairman himself stated:

[the purpose of codification was to] draw all the law in a particular area into a new code, simply taking into consideration the statutes that have been passed and perhaps in conflict and finding the latest version and taking into consideration the Court interpretation [so] that you'd have a restatement of the law without any substantive changes in the law. *Id.*

Yet another consideration is that "the courts have consistently recognized that the 'genius and spirit of Texas exemption laws' require their liberal construction." *H.A. Phillips v. C. Palomo & Sons*, 270 F.2d 791, 793 (5th Cir.1959) (citing *Meritz v. Palmer*, 266 F.2d 265, 267 (5th Cir.1959)). At least one Texas court has stated that

the exemption statutes are never restricted in their meaning and effect and that questions regarding the extent of exemptions are generally resolved in favor of the one claiming the exemption. *Stephenson v. Wixom*, 727 S.W.2d 747, 749 (Tex.App.–Ft. Worth 1987, no writ).[1]

A blanket finding that all jewelry could be claimed exempt, however, would ignore two very important factors. First, we live in a more affluent society than that of the early 1900's when the Texas courts issued the early opinions interpreting the exemption statutes to include all jewelry owned by the debtor. Today, jewelry is frequently purchased as an investment, never to be worn or perhaps worn only on rare occasions. These items could hardly come within the plain meaning of the word "clothing." Similarly, when jewelry is locked away for fear of robbery or theft, it would not fall within this definition. Therefore, this Court would find exempt from execution by creditors only that jewelry which is worn by the debtor on a continuing basis.

■ Second, and perhaps somewhat related to the first factor, Section 42.002(3) of the Property Code specifically states that property listed in the statute may be claimed as exempt only if it is "reasonably necessary" to the family or single adult. Keeping in mind the liberality with which the Texas exemption statutes are to be construed, the Court should ask whether an objective reasonable person would find the jewelry necessary to the debtor or his family. In making this determination, the definition of "necessary" should not be limited to that which is indispensable, but should include things which are usual and appropriate for the reasonable comfort and convenience of the debtor. *In re Millington's Estate*, 63 Cal.App. 498, 499, 218 P. 1022, 1023 (Cal.Dist.Ct.App.1923). In this

Court's opinion, this analysis should include consideration of such things as whether the item is of sentimental value to the debtor or whether the item serves some worthy purpose such as keeping time.[2]

■ In the present case, this Court would find the two rings and the two ring guards which the Debtor wore on a daily basis exempt. In addition, the two pins, worn on a less frequent but regular basis, would also be held exempt under this analysis.

### b. Property held in custodia legis

■ It is a well established principle of law that property held in the custody of the law cannot be garnished. *Pace v. Smith*, 57 Tex. 555 (1882); *Southwestern Bell Telephone v. Watson*, 413 S.W.2d 846, 848 (Tex.Civ.App.–Corpus Christi 1967, no writ). While the majority of the case law dealing with this doctrine pertains to property held by the clerk of the court, the Texas Supreme Court noted in *Pace*, that the principle also applied to property held by other officers of the court including receivers, assignees in bankruptcy, disbursing officers, sheriffs, executors, administrators and guardians. The court expounded further stating, "the general principle underlying this doctrine is, that 'no person deriving his authority from the law, and obligated to execute it according to the rules of law, can be holden by process of this kind.'" *Pace*, 57 Tex. at 558 (citing *Brooks v. Cook*, 8 Mass. 246).

In the instant case, Mr. Prather stated in his Supplemental Affidavit in Support of Motion to Lift Stay, filed September 1, 1987, that he and counsel for Debtor's former husband in the state court conversion action agreed to place the disputed property in a safe deposit box, during the penden-

---

1. During oral argument on the exemption issue, the Claimants introduced case law from state courts other than Texas, holding jewelry was not exempt under statutes very similar to the Texas statute presently in question. Based on the foregoing discussion, this Court is convinced that the circumstances surrounding the Texas exemption statute are unique and finds the other state court opinions on this subject unpersuasive.

2. This Court specifically declines to state whether the value of the jewelry should be considered in this analysis. Of course, if the item was of such value that it would exceed, or cause the Debtor's total personal property claimed as exempt to exceed the $15,000.00/$30,000.00 limit, it would not be exempt in any case. *See,* TEX. PROP.CODE ANN. § 42.001 (Vernon 1984).

cy of the case, "in lieu of using the Registry of the State District Court." By their intention, these attorneys made themselves trustees of the property, and a substitute for the Court, and therefore, their possession of the property was in the nature of *custodia legis*. This Court must then take "jealous care ... in an effort to see that one who stands in a fiducial relationship to another does not violate that sacred obligation, under any beguiled pretext." *Corn v. First Texas Joint Stock Land Bank of Houston*, 131 S.W.2d 752, 758 (Tex.Civ. App.–Ft. Worth 1939, writ refused).

Since it is irrefutable that the property could not have been subject to garnishment had it been held by the Court, it therefore follows that property held by attorneys as trustees of the property in the Court's stead should be similarly protected from execution.

### CONCLUSION

For the foregoing reasons, the Court finds that the property was held in *custodia legis* at the time the writ of garnishment issued and was thereby immune from garnishment. Therefore, the claim in question is unsecured.